Meltzer Lippe Goldstein & Breitstone LLP v. Malfetti

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 25th day of September, two thousand nineteen.

Present:     ROSEMARY S. POOLER,
             BARRINGTON D. PARKER,
             REENA RAGGI,
                     *Circuit Judges*.

_____

MELTZER LIPPE GOLDSTEIN & BREITSTONE LLP,

                 *Plaintiff-Counter-Defendant-Appellant*,

        v.                                              18-2982-cv

JAMES MALFETTI, DBA Management Recruiters of Union County, NJ,

                 *Defendant-Counter-Claimant-Appellee*.

_____

Appearing for Appellant:     Robert M. Calica, Rosenberg Calica & Birney LLP, Garden City, NY

Appearing for Appellee:      Randall L. Rasey, Barton LLP (Roger E. Barton on the brief) New York, NY

Appeal from the United States District Court for the Eastern District of New York (Hurley, *J.*)

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Meltzer Lippe Goldstein & Breitstone, LLP ("Meltzer" or "Meltzer Lippe") appeals from a judgment of the district court holding that Meltzer had breached a fee agreement with James Malfetti, d/b/a Management Recruiters of Union County, NJ ("MR"), a search and recruiting company engaged by Meltzer to place attorneys at its firm. The district court, following a trial to the bench, found that the breach occurred when Meltzer refused to pay MR after Meltzer partner David Heymann purchased Kern Augustine Conroy & Schoppmann, PC, a health care law firm introduced to Meltzer at its request by MR. We assume familiarity with the underlying facts and procedural history of the case. We review the district court's findings of fact for clear error and its legal conclusions de novo. *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 51-52 (2d Cir. 2011).

The district court found that the fee agreement was an enforceable contract between Meltzer and MR for the placement of attorneys with Meltzer. *Meltzer, Lippe, Goldstein & Breitstone, LLP v. Malfetti*, 2018 WL 4627667, at *10 (E.D.N.Y. Sept. 27, 2018). The district court noted that Dawn Laffin, CFO and COO of Meltzer, had solicited Joshua Ben-Asher, a recruiter at MR, to place attorneys with Meltzer. *Id.* Laffin and Ben-Asher discussed and finalized a fee agreement, a section of which addressed "Placement Fee for Group Placements," where "a Group is defined as two or more attorneys from the same law firm" placed with Meltzer in the course of a single transaction. *Id.* at *2. The district court also found that the fee agreement contained a provision stating that if Meltzer engaged attorneys introduced by MR through an "affiliate," rather than hiring them directly, the fee agreement would still apply. *Id* at *2, *11. The district court reasoned that Heymann, as a Meltzer partner, fell "comfortably within

2

the plain meaning of the word 'affiliate.'" *Id*. at \*11. The district court also found that subsequent to the Kern transaction, Meltzer "managed, controlled," "exploited," and "assumed operational management" of Kern. *Id.* Moreover, a press release publicized the Kern transaction "as the formation of an 'alliance' between Kern Augustine and Meltzer Lippe." *Id.* at \*5, \*11. These findings led the district court to conclude that the fee agreement obligated Meltzer to pay MR a placement fee for the Kern attorneys. *Id.* at \*12. We identify no error in these findings or conclusions.

On appeal, Meltzer argues that the fee agreement did not apply to the Kern transaction because it was the sale of a business, not the placement of attorneys. We are not persuaded. The fee agreement encompassed the Kern transaction regardless of how the transaction is categorized. As the district court correctly noted, the fee agreement contains a group placement provision, which applied if Meltzer acquired two or more attorneys from the same law firm, as was the case in the Kern transaction. Specifically, the contract provides that MR's fee "is payable should [Meltzer] or [its] affiliate engage [the] candidate for any position within one year after our most recent communication relating to such candidate." App. at 447. As we have already noted, the district court did not err when it found that Heymann was an "affiliate" of Meltzer.

Meltzer argues that because Heymann purchased Kern as a "personal investment," the transaction was not covered by the agreement. However, as noted by the district court, Ben-Asher introduced Kern, not to Heymann but to Laffin, after the latter had requested that MR search for a "[h]ealth care boutique firm or dept" to add to the Meltzer firm. *Meltzer, Lippe, Goldstein & Breitstone, LLP*, 2018 WL 4627667, at \*3. Indeed, Laffin and Meltzer's chairman were actively involved in the negotiations for Kern. But only after Meltzer determined that for

3

legal reasons it could not purchase Kern directly did it arrange for Heymann to purchase the practice. In fact, the Kern transaction was announced to the public via press release as an alliance and partnership with Meltzer. *Id.* at *5. Kern and Meltzer attorneys subsequently worked in the same offices, and at least one Kern attorney performed cross-firm work even after being transferred to Meltzer. The fact that after MR introduced Kern to Meltzer the latter restructured its purchase of Kern as a stock purchase by a Meltzer partner does not alter the fact that MR performed exactly the services for which it had been retained by Meltzer, thereby obligating Meltzer to pay under the agreement. We see no error in the district court's finding that the fee agreement applies to the Kern transaction regardless of whether it can be characterized as the sale of a business rather than an "attorney placement."

Meltzer's further argues that the fee agreement with MR had expired before the Kern transaction. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006) (internal quotation marks omitted). Meltzer did not raise this argument before the district court. Instead, the party argued below "that it did not enter into a binding agreement with Management Recruiters" and that even if it did, "the agreement is not enforceable under the statute of frauds." *Meltzer, Lippe, Goldstein & Breitstone, LLP*, 2018 WL 4627667, at *9. But even setting aside this issue, the argument is meritless. Significantly, during the Kern negotiations Meltzer gave no indication to MR that it believed that the agreement had expired. To the contrary, Laffin testified that when she asked MR to find a health care practice group, she believed that the request would fall under the fee agreement. Moreover, Laffin paid MR for a placement based on the same fee agreement while the Kern negotiations were ongoing. In short,

4

the record evidence defeats Meltzer's argument that the fee agreement had expired. Thus, we see no error in the district court's findings or conclusions.

Accordingly, the judgment of the district court is AFFIRMED.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk